Stuart M. Paynter (SBN 226147)
THE PAYNTER LAW FIRM PLLC
1200 G Street NW, Suite 800
Washington, D.C. 20005
Telephone: (919) 245-3116
Facsimile: (866) 734-0622
Email: stuart@paynterlaw.com

Robert B. Carey (*pro hac vice*)
E. Tory Beardsley (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone:  (602) 840-5900
Facsimile:  (602) 840-3012
Email:  rob@hbsslaw.com
Email:  toryb@hbsslaw.com

*Attorneys for Plaintiff Beulahland, LTD.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| BEULAHLAND, LTD<br><br>Plaintiff,<br><br>v.<br><br>TRUCK INSURANCE EXCHANGE, FARMERS INSURANCE EXCHANGE, FIRE INSURANCE EXCHANGE, AND MID-CENTURY INSURANCE COMPANY, and DOES 1 THROUGH 20, INCLUSIVE,<br><br>Defendants. | No. 2:20-cv-06626-GW-AGR<br><br>Honorable George H. Wu<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NATURE OF THE ACTION ........................................................................ 1

JURISDICTION AND VENUE ................................................................... 3

PARTIES .................................................................................................... 4

FACTUAL ALLEGATIONS ...................................................................... 6

CLASS ALLEGATIONS .......................................................................... 15

CLAIMS FOR RELIEF ............................................................................ 18

FIRST CLAIM FOR RELIEF (DECLARATORY JUDGMENT AGAINST ALL
     DEFENDANTS) ................................................................................ 18

SECOND CLAIM FOR RELIEF (BREACH OF CONTRACT AGAINST ALL
     DEFENDANTS) ................................................................................ 23

PRAYER FOR RELIEF ............................................................................ 24

DEMAND FOR JURY TRIAL ................................................................. 25

Plaintiff Beulahland, Ltd., individually and on behalf of all others similarly situated, alleges as follows:

## NATURE OF THE ACTION

1.      This is a class action brought by insurance policyholders seeking a declaratory judgment ordering their insurance provider, Truck Insurance Exchange, together with certain related Farmers Insurance Group entities (Farmers Insurance Exchange, Fire Insurance Exchange, and Mid-Century Insurance Company) and Does 1 through 20, inclusive (collectively, "Defendants" or "Farmers"), to honor a valid contract of insurance requiring payment for lost business income, extra expenses, and other business-related losses in light of action by governmental authority requiring closure of their covered businesses or premises. This Complaint also seeks damages for breach of contract for benefits due under the insurance policy contracts.

2.      If an insurer promises that by taking out "business income coverage, your policy helps replace the income lost while your company is closed," it needs to keep that promise. *See* FARMERS INSURANCE, https://www.farmers.com/learn/insurance-questions/business-income-coverage-definition/ (last accessed Apr. 28, 2020). Defendants understand that business interruption insurance is critical because it helps keep capital flowing to "keep your company running," including lost profits, payroll, taxes, and other operating expenses. *Id.*; *see also* FARMERS INSURANCE, https://www.farmers.com/business/property/ (last accessed Apr. 28, 2020).

3.      Though Defendants assure prospective customers that Farmers has "a solid reputation for doing the right thing for the right reason," Defendants have proven during the COVID-19 pandemic that this reputation is undeserved. Defendants have reflexively denied or will reflexively deny coverage based on consideration of their own interests, in contravention of basic interpretation principles requiring exclusions to be construed narrowly and equal consideration to be given to the insureds' interests,

without a proper investigation, and with no disclosed outside counsel opinion supporting Defendants' position.

4.    Plaintiff Beulahland, Ltd. ("Plaintiff") brings this class action on behalf of all those insured under policies issued by Defendants that provide for business interruption coverage, also known as business income and extra expense protection.

5.    Defendants' insureds dutifully paid premiums to Defendants—some doing so year-after-year, to the tune of thousands or even tens of thousands of dollars per year—so that when the unimaginable hit, they would be protected. All insureds included in the proposed class purchased an "all risks" policy that covered every one of those unimaginable risks unless the policy exclusions removed that risk from coverage.

6.    When the novel coronavirus hit the United States, governments across the country—state and local—acted to protect the public health by entering orders that limited business operations, use of or access to facilities, travel, and in-person social interactions. The governmental orders also directed businesses to undertake certain affirmative actions, such as routine disinfecting cleanings of their business premises. These orders, directly and indirectly, caused Defendants' insureds to suffer the very losses Defendants promised to reimburse. These governmental orders are a quintessential, well-known exercise of police powers. "The state's inherent prerogative to protect the public's health, safety, and welfare is known as the police power." *See* Gostin, Lawrence, and Wiley, *Lindsey, Public Health Law*, University of California Press, p. 11. Using or accessing one's real property or employing or putting into service (or removing therefrom) one's equipment and business property, is inherently physical in nature. And ousting or precluding the use of or access to real property results in a loss of a physical nature.

7.    Rather than giving equal consideration to the interests of the insureds, as Defendants must do, evaluating each claim based on all information that could be

- 2 -

gathered from a fair and neutral individualized investigation, as Defendants also must do, or securing an outside counsel opinion on coverage to avoid bias, as industry standards require, Defendants decided their denial decision was correct and that no other reasonable interpretation of the policy language to the contrary exists, and thus all claims related to governmental orders limiting the use of or access to insureds' property were invalid. In the policy language, however, Defendants did not choose to exclude all governmental action from coverage. Defendants instead chose to exclude only governmental action ordering the seizure or destruction of property, and to cover all suspensions of business operations caused by "direct physical loss," a term it chose not to define so that it has the meaning Defendants now assert against its insureds.

8.      Defendants' interpretation of the policy contract is wrong, and its denial of coverage for losses caused by limitations on the physical use and access to insureds' property breached the contract.

9.      Plaintiff seeks for itself and the Class compensatory damages, statutory damages, attorney's fees, interest, and declaratory relief.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States. This Court also has subject-matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action, including claims asserted on behalf of a nationwide class, filed under Rule 23 of the Federal Rules of Civil Procedure; there are dozens, and likely hundreds, of proposed Class members; the aggregate amount in controversy exceeds the jurisdictional amount or $5,000,000.00; and Defendants are citizens of a State different from that of Plaintiff and members of the Class.

11.     Venue is proper in this District under 28 U.S.C. § 1391 (a)–(d) because, inter alia, substantial parts of the events or omissions giving rise to the claim occurred

1    in the District and/or a substantial part of property that is the subject of the action is

2    situated in the District.

3                                          **PARTIES**

4        12.    Plaintiff Beulahland, Ltd. contracted with Truck Insurance Exchange for

5    commercial property, liability, and other insurance, and the policy at issue was

6    effective before the losses herein described were sustained. Plaintiff Beulahland, Ltd.

7    is an Oregon-based s-corporation (Oregon registry number 589144-83) domiciled in

8    Portland, Oregon.

9        13.    Plaintiff Beulahland, Ltd. operates the Beulahland Coffee and Alehouse,

10   an all-in-one restaurant, lounge, and sports bar.

11       14.    Upon information and belief, Defendant Truck Insurance Exchange is a

12   California corporation with its principal place of business in Woodland Hills,

13   California. Upon information and belief, Defendant Truck Insurance Exchange is a

14   reciprocal interinsurance exchange organized pursuant to California Insurance Code §

15   1300, *et seq.* Truck Insurance Exchange receives administrative services from Farmers

16   Group, Inc.

17       15.    Upon information and belief, Defendant Farmers Insurance Exchange is a

18   California corporation with its principal place of business in Woodland Hills,

19   California, writes policies for the multi-peril (non-liability part) line, and is a

20   reciprocal interinsurance exchange organized pursuant to California Insurance Code §

21   1300, *et seq.* Farmers Insurance Exchange receives administrative services from

22   Farmers Group, Inc.

23       16.    Upon information and belief, Defendant Fire Insurance Exchange is a

24   California corporation with its principal place of business in Woodland Hills,

25   California, writes policies for the multi-peril (non-liability part) line, and is a

26   reciprocal interinsurance exchange organized pursuant to California Insurance Code §

27

28

1300, *et seq.* Fire Insurance Exchange receives administrative services from Farmers Group, Inc.

17.     Upon information and belief, Defendant Mid-Century Insurance Company is a California corporation with its principal place of business in Woodland Hills, California, and writes policies for the multi-peril (non-liability part) line and is a subsidiary of Farmers Insurance Exchange. Defendant Mid-Century Insurance Company receives administrative services from Farmers Group, Inc.

18.     Upon information and belief, and following a reasonable investigation, Defendants all act in concert as part of the Farmers Insurance Group of Companies. Prospective customers purchase insurance from their Farmers "agent," but the actual policy will be issued by an insurance exchange or a company that the insured has never dealt with, and the claim will be adjusted by yet another Farmers entity. The entire enterprise is controlled by Farmers Group, Inc., which provides administrative, operational, and management services to the Defendants (exchanges) through Farmers Management Services. In return, Farmers Group, Inc. receives fee income for providing these services to Defendants. The concerted activities of the Defendants, including the common management and guidance of Farmers Group, Inc., results in the Defendants' adoption of common practices, approaches, forms, and positions, including those used and applied in adjusting claims related to damage from and governmental action associated with COVID-19. Thus, because the underlying transactions arise from a common source and all involve the same questions of law and fact, a single resolution of the dispute against all Defendants would be expeditious.

19.     For example, upon information and belief and following a reasonable investigation, Defendants deny their policyholders' COVID-19-related business interruption claims using letters that are nearly-identical, using identical headers and footers, using substantially the same introductory and concluding comments, and

AMENDED CLASS ACTION COMPLAINT
010909-16/1327971 V4

quoting substantially the same policy language. Upon information and belief, these letters are drafted by claims adjusters with the same email address suffix (i.e., "@farmersinsurance.com"), and the mailings themselves are generated by the "Farmers Insurance National Document Center" located at "P.O. Box 268994 Oklahoma City, OK 73126-8994."

20.    Further, Defendants' rely on standardized policy forms in underwriting business interruption claims. Indeed, the form policy documents used by Truck Insurance Exchange, Farmers Insurance Exchange, and Mid-Century Insurance Company contains certain provisions that are only applicable if the policy is issued by one of the other Defendants. For example, Plaintiffs' policy (issued by Truck Insurance Exchange) contain a "special provision" that is "only applicable if the policy is issued by Mid-Century Insurance Company." (Ex. A at 160). Additionally, Plaintiff's policy is signed by officers of Farmers Insurance Exchange, Mid-Century Insurance Company, and Truck Insurance Exchange. Upon Information and belief, Defendants rely on a single master form document, with certain identified provisions applicable only to a given insurance company.

21.    Finally, upon information and belief, the Farmers entities and Defendants share the same or substantially the same corporate officers and boards of directors, and have the same principle place of business.

22.    Plaintiff is ignorant of the true names and capacities of the defendants sued herein under the fictitious names Does 1 through 20, inclusive. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named defendants are responsible in some manner for the unlawful conduct alleged herein.

## FACTUAL ALLEGATIONS

23.    Plaintiff Beulahland, Ltd. owns and manages a full-service restaurant and alehouse.

AMENDED CLASS ACTION COMPLAINT
010909-16/1327971 V4

24.     Plaintiff opened the Beulahland Coffee & Alehouse ("Beulahland") in 1997.

25.     Beulahland serves the Portland community in a myriad of ways with its primary business being a bar and lounge and a popular brunch service operating Friday through Sunday. Beulahland also hosts soccer watch parties, DJ nights, and private parties for birthdays or corporate get-togethers.

26.     Plaintiff was required to close Beulahland's dine-in services pursuant to state and local guidelines.

27.     Initially, Beulahland kept its business open for off-premises consumption to sell off its remaining stores of beer. While Beulahland remained open, the restaurant took numerous sanitization measures pursuant to state guidance, including: (1) regularly applying disinfectants to all surfaces; (2) requiring customers from different households to remain six feet apart; (3) requiring staff members to remain at a distance of six feet when possible; and (4) requiring staff members to wear masks. These measures imposed substantial expense on Plaintiff.

28.     Because Plaintiff's business model is unable to sustain "to-go" services, Beulahland was shut down entirely.

## A.     Plaintiff's Insurance Policy Covers All Risks Unless Expressly Limited or Excluded in the Contract

29.     To protect its thriving business from interruption and other perils, Plaintiff purchased business insurance from Defendants, including loss of income, extra expense, property, liability, and other coverages.

30.     Plaintiff's policy is Policy Number 60591-50-26 ("Policy").

31.     Plaintiff paid $12,325.00 for the Policy, paying in full in advance. Plaintiff purchased business insurance from Defendants and paid the requisite premiums in exchange for "insurance as stated in the policy."

32.     The Policy's effective period is September 17, 2019 to September 17, 2020. *See*, Ex. A, Insurance Policy.

AMENDED CLASS ACTION COMPLAINT
010909-16/1327971 V4

33.     The Policy is a renewal policy. The prior policy contained material terms identical to the Policy currently in effect.

34.     Plaintiff's Policy consists of the policy jacket and its policy provisions, the declarations or information page, and the endorsements.

35.     This businessowners coverage applies to the insured's covered location identified in the Policy Declarations as 118 NE 28th Avenue, Portland, OR 97232-3146. The location comprises the described premises and business personal property covered by the Policy.

36.     In exchange for payment of the premium, Defendants agreed to provide the insurance coverages described in the Policy.

37.     The Policy is an "all risks" policy. That is, the policy covers the insured for any peril, imaginable or unimaginable, unless expressly limited or excluded. In the event a covered peril results in physical loss or damage to Plaintiff's business premises or property, the Policy will pay for lost business income and extra expenses. Business income means net income (net profit or loss) that would have been earned had no physical loss or damage occurred, and continuing normal operating expenses incurred (including payroll). Extra expense means the costs incurred because of the physical loss or damage—that is, those costs that would have otherwise been avoided. In the event of physical loss or damage, the Policy pays for both.

38.     Specifically, the Policy provides property coverage under the Businessowners Special Property Coverage Form. The Businessowners Special Property Coverage Form in turn sets forth coverage for "Business Income" and "Extra Expense."

39.     Under the Business Income coverage, Defendants must "pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.'"

AMENDED CLASS ACTION COMPLAINT
010909-16/1327971 V4

40.     Under the Extra Expense coverage, Defendants must pay the "necessary Extra Expense you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property at the described premises."

41.     The Business Income and Extra Expense paragraphs also establish the applicable Covered Causes of Loss, which is defined as "Risks of Direct Physical Loss unless the loss is: a. Excluded in Section B, Exclusions; or b. Limited in Paragraph A.4, Limitations; that follow." This language covers all risks unless limited by Paragraph A.4 or excluded by Section B.

42.     The Policy provides extended coverage for loss of business income from dependent properties, tips, and certain orders from a civil authority. These coverages have independent limits of insurance benefits.

43.     The Policy contains several exclusions, which identify risks that preclude coverage for loss or damage caused by those risks.

44.     Neither these nor any other exclusions in the Policy preclude coverage for the governmental orders pursuant to which Plaintiff and Class members suspended their business operations. The governmental orders therefore constitute a covered "direct physical loss" under the Policy.

**B.     The COVID-19 Pandemic Hits Oregon**

45.     The first public reports of COVID-19 appeared on December 31, 2019, indicating the outbreak of the virus in Wuhan, China.

46.     On January 21, 2020, the first American COVID-19 case was confirmed in the State of Washington. *See* CENTERS FOR DISEASE CONTROL, https://www.cdc.gov /media/—releases/2020/p0121-novel-coronavirus-travel-case.html (last accessed Apr. 28, 2020).

47.     The Oregon Health Authority (OHA) confirmed the state's first case of COVID-19 in Washington County, Oregon on February 28, 2020. *See Oregon*

- 9 -

*announces first, presumptive case of novel coronavirus* (Feb. 28, 2020), OREGON HEALTH AUTHORITY, https://www.oregon.gov/oha/ERD/Pages/Oregon-First-Presumptive-Case-Novel-Coronavirus.aspx (last accessed June 11, 2020); *see also* Fedor Zarkhin, *Oregon coronavirus case shuts Lake Oswego elementary school* (Feb. 28, 2020), THE OREGONIAN, https://www.oregonlive.com/news/2020/02/coronavirus-appears-in-oregon.html (last accessed June 10, 2020).

48.    On March 2, 2020, the OHA reported the state's first known case of COVID-19 resulting from community transmission. *Oregon resident hospitalized in Walla Walla* (Mar. 2, 2020), OREGON HEALTH AUTHORITY, https://www.oregon.gov/oha/ERD/Pages/Oregon-identifies-third-presumptive-positive-case-of-COVID-19.aspx (last accessed June 11, 2020).

49.    By March 3, 2020, the OHA had mobilized an incident response team tasked with tracking and monitoring active cases in Oregon and performing contact tracing to slow the spread of COVID-19. Elise Haas, *Health officials: More Oregon coronavirus cases likely* (Mar. 3, 2020), KOIN, https://www.koin.com/news/health-officials-more-oregon-coronavirus-cases-likely/ (last accessed June 10, 2020). The OHA COVID-19 task force was also responsible for identifying best practices for slowing the spread of COVID-19. *Id.*

50.    By March 8, 2020, Oregon's COVID-19 case count had risen to 14 total presumptive or confirmed cases. *Health officials recommend taking steps to prevent infection and keeping schools open* (Mar. 8, 2020), OREGON HEALTH AUTHORITY, https://www.oregon.gov/oha/ERD/Pages/State-agencies-issue-COVID-19-guidance-Oregon-schools-universities.aspx (last accessed June 10, 2020).

51.    On March 13, 2020, the President of the United States declared a national emergency.

52.    Yet, throughout this entire period from December 2019 through March 17, 2020, Plaintiff did not suffer an interruption or cessation of its thriving business.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## C.    Oregon Takes Governmental Action Forcing Plaintiff's Business to Shutter

53.    It was when Oregon's state and local governments entered civil authority orders beginning in March 2020 that Plaintiff was forced to close or curtail its business operations.

54.    As early as March 8, 2020, the Governor of the State of Oregon, Kate Brown, entered an order declaring, "the novel infectious coronavirus has created a threat to public health and safety and constitutes a statewide emergency under ORS 401.025(1)." *See* Oregon Executive Order 20-03 (Mar. 8, 2020), *available at https://www.oregon.gov/gov/Documents/executive_orders/eo_20-03.pdf* (last accessed June 10, 2020).

55.    On March 17, 2020, the Governor announced new directives to restaurants, bars, taverns, brewpubs, and other establishments that offer food or drink. Oregon Executive Order 20-07 (Mar. 17, 2020), *available at available at https://www.oregon.gov/gov/Documents/executive_orders/eo_20-07.pdf* (last accessed June 10, 2020). Governor Brown's March 17 order prohibited such establishments from allowing on-premises consumption of food or drink. *Id.* Establishments that continued to offer food or drink for off-premises consumption were required to implement social distancing protocols of at least three feet between customers. *Id.* The establishments were likewise required to implement similar social distancing protocols for staff members when possible. *Id.* Governor Brown's March 17 order also prohibited gatherings of 25 people or more. *Id.* The prohibition of on-premises dining was initially set to expire on April 14, 2020 (*Id.* ¶ 8) but was extended indefinitely by Governor Brown. *See* Oregon Executive Order 20-14 (April 7, 2020), *available at available at https://www.oregon.gov/gov/Documents/executive_orders/eo_20-14.pdf* (last accessed June 11, 2020).

56.    On March 19, 2020, less than two months after the first confirmed case of COVID-19 appeared in Oregon, Governor Brown took the dramatic step of ordering,

- 11 -

"that, to the maximum extent possible, all individuals [in the state of Oregon] stay at home or at their place of residence." Oregon Executive Order 20-12 (Mar. 19, 2020) *available at https://www.oregon.gov/gov/Documents/executive_orders/eo_20-12.pdf* (last accessed June 10, 2020). The Governor also required that "[w]hen people need to leave their homes or residences, they should at all times maintain a social distancing of at least six feet from any person who is not a member of their immediate household, to the greatest extent possible, and comply with other Social Distancing Requirements guidance issued by the Oregon Health Authority." *Id.* By its own terms, the "Stay Home, Save Lives" order was "essential to the health, safety and welfare of the State of Oregon." *Id.* The order was made enforceable pursuant to Oregon law, and violation of the order carried the threat of misdemeanor punishable by a fine, imprisonment up to 30 days, or both. *See Id.;* ORS § 401.990; ORS § 161.615, 635.

57.    On May 14, 2020, Governor Brown announced the criteria for a gradual reopening in the state of Oregon. Oregon Executive Order 20-25 (May 14, 2020), *available at https://www.oregon.gov/gov/Documents/executive_orders/eo_20-25.pdf* (last accessed June 11, 2020). The order set forth certain prerequisites for reopening specified businesses in the state of Oregon in a phased approach. *Id.* These prerequisites include: declining prevalence of COVID-19, adequate testing and tracing measures in place, adequate isolation facilities in place and other guidelines and empowered the OHA to notify the Governor when these prerequisites were met, at which time the Governor could determine that Phase I of Oregon's reopening plan was met. *Id.* The phased reopening plan also empowered Oregon counties to seek a determination from the Governor to transition to Phase I if the prerequisites of Phase I are met. *Id.*

58.    Phase I of Oregon's re-opening plan allowed gatherings of up to 25 persons and allowed certain business sectors, including restaurants, gyms, and personal care facilities, so long as they complied with all OHA and other applicable

guidance. *Id.* For example, establishments offering dine-in services are required to ensure tables are spaced at least six feet apart and were further directed to "[r]emove or restrict seating to facilitate the requirement" and "[p]rohibit counter and bar seating unless the counter faces a window or wall and at least six (6) feet of distance is maintained between parties" and must "[d]isinfect customer-contact surfaces at tables between each customer/dining party including seats, tables, menus, condiment containers and all other touch points." Oregon Health Authority Order 2342B (July 24, 2020) https://sharedsystems.dhsoha.state.or.us/DHSForms/Served/le2342B.pdf? (last accessed Oct. 9, 2020).

59.    Multnomah County, where Plaintiff resides, was the last Oregon county to be transitioned into Phase I of Oregon's reopening plan. Brooke Jackson-Glidden, *Portland's restaurants and bars will not reopen Friday* PORTLAND EATER (June 11, 2020), https://pdx.eater.com/2020/6/11/21288660/multnomah-county-not-yet-reopening-june-12-restaurant-bars-covid-19 (last accessed June 12, 2020); MULTNOMAH COUNTY, https://multco.us/novel-coronavirus-covid-19/covid-19-guidance (last accessed June 12, 2020).

**D.    Defendants Deny Plaintiff's Insurance Claim**

60.    In light of the foregoing civil authority orders, Plaintiff submitted a claim for related business losses and extra expenses. The claim indicated a loss date beginning on March 17, 2020. On or about April 23, 2020, Plaintiff was advised by phone that its claim would be denied.

61.    By letter on April 24, 2020 Defendants then denied Plaintiff's claim. *See* Ex. B, Denial Letter. The letter stated three relevant bases for the denial. First, Defendants found "no direct physical loss or damage to property at the described premises from a covered cause of loss." Second, Defendants found that "access to the described premises was not prohibited due to direct physical loss of or damage to property, other than at the described premises, resulting from a covered cause of loss,"

- 13 -

rendering the Policy's civil authority provisions inapplicable. Third, Defendants found that the Policy "is endorsed to exclude loss or damage caused by or resulting from any virus that is capable of inducing physical distress, illness, or disease."

62.    Defendants' denial letter also quoted at length numerous provisions from the Policy itself as justification for the denial, but without any explanation.

63.    In reaching their denial decision, Defendants conducted no investigation into the covered premises to determine the precise physical loss or damage that resulted from the governmental orders described herein. Defendants made no attempt to communicate with Plaintiff from the time that Plaintiff filed its claim and the time Defendant informed Plaintiff a denial was forthcoming, did not ask for any additional information, and did not view in any way the covered premises.

64.    Plaintiff followed all governmental orders described herein, resulting in the curtailment or complete closure of its business operations.

65.    Beulahland tried to sustain operating a to-go service, and the restaurant and bar took numerous sanitization measures pursuant to state guidance, including: (1) regularly applying disinfectants to all surfaces; (2) requiring customers from different households to remain six feet apart; (3) requiring staff members to remain at a distance of six feet where possible; and (4) requiring staff members to wear masks. Plaintiff incurred great expense enacting these measures.

66.    But, because limiting Plaintiff's business to providing food and beverages for off-premises consumption was not viable or sustainable for Plaintiff in the long term, Beulahland had to close its business.

67.    On August 6, 2020, Plaintiff reopened its restaurant and was forced to make several physical changes to the premises to comply with the requirements set forth by the Oregon Health Authority. For instance, Plaintiff was required to rearrange its tables and remove half of them to comply with social distancing guidelines. Additionally, all counter seating, which was bolted into the floor, had to be removed.

- 14 -

Plaintiff further added Plexiglas at its ordering windows, counters, and registers. Plaintiff also had to apply directional traffic flow arrows on its floors and added a large menu board to facilitate ordering at the counter. Plaintiff was required to remove common area refrigeration appliances and half of its pinball machines.

68.     Plaintiff has spent at least $5,500 to build an outdoor dining space to further accommodate the required social distancing.

69.     Additionally, Plaintiff is required to apply harsh, corrosive chemicals and bleach to surfaces in between each use and performs full janitorial services to the restaurant three times per day.

70.     Finally, Plaintiff was required to cut its hours so the restaurant closes at 10 p.m. pursuant to state orders.

71.     The denial is wrong. The governmental action affecting Plaintiff's property—executive orders that directly or indirectly limit direct physical access to or use of Plaintiff's real property and business equipment—has caused a loss of income and yet the expenses associated with keeping Beulahland open and in compliance with state orders remain the same or have increased. Coverage for this type of governmental action is nowhere limited or excluded in the Policy.

## CLASS ALLEGATIONS

72.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(3) and 23(c)(4) on behalf of itself and the following Class:

> All policyholders in the United States who are insured under a policy issued by Defendants with coverage for Business Income, Extended Business Income, Civil Authority, Tips Included, and Dependent Property and/or Extra Expense, and whose covered premises were the subject of a government order relating to COVID-19.

Government Order means any order issued by any governmental authority in the United States, including but not limited to those orders entered by any state, county, or municipal authority on or after February 1, 2020, that restricts or otherwise imposes

- 15 -

burdens on a policyholders' use of or access to covered premises for purposes of protecting public health or safety in light of the spread of COVID-19, including but not limited to the governmental orders described herein. Excluded from this Class are Defendants and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, and assigns; governmental entities; Class counsel and their employees; and the judicial officers and Court staff assigned to this case and their immediate families.

73.    While the exact number of Class members cannot be determined, the Class consists of at least thousands of persons, making joinder impractical, in satisfaction of Fed. R. Civ. P. 23(a)(1). The exact number of Class members can readily be determined by documents maintained by Defendants.

74.    There are questions of fact and law common to the Class, including:

a.    Whether the Policy covers the risk of governmental action;

b.    Whether the Policy's governmental-action exclusion is limited to orders of seizure and destruction other than the express exemption from the exclusion for preventing the spread of a fire;

c.    Whether the Policy's "loss of use" exclusion is limited to consequential, indirect injuries rather than losses directly caused by or resulting from governmental action;

d.    Whether losses caused by limits or bans on using or accessing one's real property or employing or putting into service (or removing therefrom) one's equipment/business property are physical losses;

e.    Whether the Policy was breached when Defendants denied coverage based on government orders that precluded or limited access to Covered Property without seizing or destroying it;

f.    Whether Defendants' breaches or wrongs injured Plaintiff and the Class;

g.    Whether Plaintiff and the Class may have an award of compensatory damages;

h.    Whether Plaintiff and the Class may have an award of attorney's fees;

i.    Whether Plaintiff and the Class may have declaratory relief.

- 16 -

75.     Plaintiff has the same interests as all other members of the Class, and Plaintiff's claims are typical of those of all members. Plaintiff's claims are coincident with and not antagonistic to those of other Class members it seeks to represent. Plaintiff and all Class members have sustained damages arising out of Defendants' common course of conduct as outlined herein. The damages of each Class member were caused by Defendants' wrongful conduct.

76.     Plaintiff will pursue this action and has retained competent Class counsel experienced in insurance litigation and class action litigation. Plaintiff will fairly and adequately represent the interests of the Class members.

77.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants' actions generally apply to the Class as a whole, and Plaintiff seeks equitable remedies regarding the Class as a whole.

78.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because the common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Plaintiff's counsel, highly experienced in insurance and class action litigation, foresee little difficulty in the management of this matter as a class action.

79.     Plaintiff cannot be certain of the form and manner of Class notice it will propose until the Class is finally defined and further discovery concerning the identity of Class members is undertaken. Based on the experience of their counsel in previous cases, Plaintiff anticipates that notice by email and mail will be given to all Class members who can be specifically identified and that this notice will be supplemented by notice published in appropriate periodicals and on the internet and by press releases and similar communications.

- 17 -

CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment Against All Defendants)**

80.     Plaintiff re-alleges and incorporates the preceding paragraphs as if set forth herein.

81.     Plaintiff brings this cause of action for itself and the Class seeking a declaration that, for those who maintain an insurance policy with Defendants, it violates the insurance contracts for Defendants to ignore the narrow nature of the governmental-action exclusion and to adopt a narrow interpretation of what must cause a suspension of business. The Policy requires that a "suspension" be caused by "direct physical loss of or damage to property at the described premises."

82.     Defendants' interpretation that the requirement of "physical loss" is not satisfied by losing physical access or use and quiet enjoyment of Plaintiff's property is wrong. The undefined phrase "direct physical loss" is reasonably construed to mean the direct loss of the ability to physically access or use property. Losing the ability to access or use one's property is a loss of physical, material rights and advantages, substantial and important. Considering that exclusions to coverage must be narrowly construed, that language drafted by the insurer with ambiguity should ordinarily be construed against the drafter, and that Plaintiff's interpretation is supported by dictionary definitions of the terms, coverage should be afforded.

83.     Under the Business Income coverage, Defendants must "pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.'"

84.     Under the Extra Expense coverage, Defendants must pay the "necessary Extra Expense you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property at the described premises."

- 18 -

85.    The Policy does not define the term "suspension." According to the Randomhouse Unabridged Dictionary, the term means "temporary abrogation or withholding, as of a law, privilege, decision, belief, etc." *See Suspension*, RANDOMHOUSE UNABRIDGED DICTIONARY, *available at* https://www.dictionary.com/browse/suspension (last accessed May 25, 2020).

86.    Under the Policy, "'Operations' means your business activities occurring at the described premises."

87.    Under the Policy, "Period of restoration" for Business Income coverage means the period of time that begins 72 hours after the time of direct physical loss, and for Extra Expense coverage means the period of time that begins at the time of direct physical loss.

88.    Additionally, under Business Income and Extra Expense coverage, the loss or damage must be caused by "direct physical loss."

**A.    Loss of Access or Use Constitutes Direct Physical Loss**

89.    The Policy does not define the phrase "direct physical loss."

90.    Common usage of the words in the phrase dictates that ouster and prohibition/interdiction of access and use by insureds and others (agents, tenants, customers, etc.) are physical losses. Such losses are direct in that ouster of and prohibition/interdiction of access and use by all nonessential people results directly in a physical loss.

91.    Physical means relating to "material things" that are "perceptible especially through the senses." *See Physical*, MERRIAM-WEBSTER (2020), https://www.merriam-webster.com/dictionary/physical (last accessed May. 24, 2020). It is also defined in a way that is tied to the body: "of or relating to the body." *Id.* Another Merriam-Webster Dictionary refines the concept of material this way: "of or relating to natural or material things as opposed to things mental, moral, spiritual, or

imaginary." *See Physical*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, (Unabr. 2020) Web. 24 Apr. 2020.

92.     Prohibiting the physical presence on the premises of all persons (except for those facilitating minimal maintenance) and the prohibition of the physical use of equipment, fixtures and furniture constitutes a physical loss that caused the suspension of business operations.

**B.     Governmental Action Resulted in Plaintiff's Loss of Use or Access to the Premises or Business Personal Property, a Non-Excluded Direct Physical Loss**

93.     Coverage under the "all risks" Policy is provided for any risk of direct physical loss unless expressly limited or excluded.

94.     One risk addressed in the Paragraph B exclusions is governmental action. *See* Form BP 00 02 01 97, Paragraph B.1.c.

95.     By recognizing governmental action in the Paragraph B exclusions, the Policy confirms governmental action as a risk of direct physical loss and a Covered Cause of Loss.

96.     The Policy excludes some but not all governmental action from coverage. The Policy excludes coverage for governmental orders requiring seizure and destruction only. Specifically, this provision excludes any loss or damage caused directly or indirectly by governmental action that consists of seizure or destruction of property by order of governmental authority unless the destruction was done to prevent the spread of a fire. As ordinarily used, "seizure" means "taking possession of person or property by legal process." The provision excludes no other governmental action from coverage (i.e., governmental orders not seeking seizure or destruction).

97.     The governmental orders affecting Plaintiff and the Class' property do not require seizure or destruction because the government did not destroy the property of Plaintiff and Class Members or take physical possession of, or title to, such

property. Instead, the orders limit access to and use of covered property at the premises described in the Policy declarations.

98.   The Policy does not exclude the governmental action described herein.

99.   The business-income losses, extra expenses, and other losses sustained by Plaintiff and the Class were caused by or resulted from the aforementioned governmental orders, a Covered Cause of Loss.

100.   The policy further requires that the business-income losses be incurred because of the necessary suspension of operations during the period of restoration. Plaintiff and the Class suffered losses because of suspension of operations during the period of restoration.

101.   The direct loss of physical access to and use of the premises listed in the Declarations, and business property thereon, for tenants and their vendors, agents, employees, and customers caused the suspension of the operations by the Plaintiff and the Class.

102.   Because the Policy covers all risks, including governmental action that, for the good of the public, does no more than limit physical access to and use of property (real and personal), coverage is required.

103.   The governmental action affecting Plaintiff's property—executive orders that directly or indirectly limit direct physical access to Plaintiff's real and personal property—has caused a loss of income and an increase in expense, exactly the "outside force" that interrupts business and causes insureds to close their doors for a period of time, that requires that capital continue to flow to keep the business afloat and to help replace lost income and pay expenses such as salaries and mortgages. This governmental action is precisely the unexpected jolt that motivates the purchase of insurance.

**C.   No Other Exclusions Apply to Preclude Coverage**

104.   No other applicable exclusions or limitations apply to preclude coverage for the direct physical losses caused by or resulting from the governmental action described herein. *See* Paragraph B, Form BP00090197.

105.   The existing virus exclusion is inapplicable because Plaintiff's losses were caused by governmental action, not the physical presence of the virus on the covered premises. Defendants conducted no investigation and have no evidence to satisfy their burden of showing the physical presence of a virus on the insured properties, which is required when asserting an exclusion. Defendants denied all claims without investigating the relevant properties.

106.   Coverage begins at the time of governmental action. Plaintiff's property was subject to governmental orders in Oregon that did not seek to seize or destroy the property. The governmental orders do not constitute governmental seizures because at no point did any governmental entity in Oregon take physical possession of the property or legal title to the property. The orders properly exercised the police powers of their respective state and local governments to protect public health, affecting Plaintiff's property, which caused a loss of the ability to physically access and use the insured property.

107.   Under each successive order, Plaintiff's property was limited to the minimum necessary operations or required closure. The governmental action also prohibited, via stay-at-home orders or travel restrictions, all nonessential movement by all residents. These governmental orders resulted in losing physical access to and physical use and enjoyment of Plaintiff's property by its owners, customers, vendors, employees, and others.

108.   Nor does the provision entitled "Consequential Losses" that excludes "Delay, loss of use or loss of market" preclude coverage.

109.   Consequential damages are special or indirect damages. Put differently, consequential damages are "[l]osses that do not flow directly and immediately from an

injurious act but that result indirectly from the act. — Also termed *indirect damages*."
*See Consequential Damages*, Black's Law Dictionary (11th ed. 2019) (emphasis in
original).

110.   The exclusion for "loss of use" therefore applies only if that "loss of use"
is itself consequential. That is not the case here. The insured-against peril—
governmental action—resulted directly and immediately in Plaintiff's physical loss of
access or use.

111.   Limiting the "loss of use" exclusion to consequential losses also renders
sensible an exclusion that otherwise swallows the entire Policy.

**D.    Declaratory Relief**

112.   Plaintiff, for itself and on behalf of the Class, seeks a declaration of rights
under Defendants' Policy language and a declaration of the rights and liabilities of the
parties herein.

113.   This Court has the power to declare the rights of the Defendants'
policyholders whether or not the policyholders have made claims for losses relating to
COVID-19.

114.   Plaintiff seeks a Declaratory Judgment finding that the Policy covers
Business Income and Extra Expense during the period of restoration caused by or
resulting from governmental action that forced Plaintiff to suspend operations, subject
to no limitations or exclusions under the Policy.

**SECOND CLAIM FOR RELIEF**
**(Breach of Contract Against All Defendants)**

115.   Plaintiff re-alleges and incorporates the preceding paragraphs as if set
forth herein.

116.   Plaintiff has a valid contract of insurance with Defendants, whereby
Plaintiff agreed to make and did make premium payments to Defendants in exchange
for Defendants' promise to indemnify the policyholders for losses including, but not
limited to, Business Income and Extra Expense.

117.   Plaintiff is current on all premiums required under the Policy and the Policy is in full effect.

118.   The Policy requires payment of losses incurred caused by or resulting from the forced suspension of operations mandated by government orders issued in Oregon, including but not limited to Business Income and Extra Expense. Coverage for these losses is in no way limited or excluded under the Policy terms.

119.   Despite the Policy affording coverage, Defendants deny the Policy affords coverage and denied or will deny coverage to Plaintiff and the Class.

120.   In addition, Defendants have uniformly taken the position, without seeking independent coverage advice, that the Policy's language does not afford coverage where governmental action limited or prohibited certain use, access, and deployment of insureds' property and that such claim would, as a business practice, be denied. Defendants' entire decision was rendered based on its reading of the contract language, and not by any specifics relating to each insured (as no investigation occurred here). By making its decision known, Defendants have anticipatorily breached the contracts.

121.   Defendants' failures to affirm coverage and pay benefits breach the contract and represent a systematic failure to pay the benefits required by the contract.

122.   As a result of Defendants' breach of contract, Plaintiff and the Class have suffered and will continue to suffer monetary losses, and without prompt relief will be forced to shutter indefinitely.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following judgment:

A.   An Order certifying this action as a class action under California law;

- 24 -

1    B.    An Order appointing Plaintiff as class representative and appointing the

2    undersigned counsel to represent the Class;

3    C.    Declaratory relief, as described herein;

4    D.    An Order finding Defendants to have breached the Policy contract;

5    E.    Compensatory damages;

6    F.    An award of attorney's fees and costs, as provided by law and/or as

7    would be reasonable from any recovery of monies recovered for or benefits bestowed

8    upon the Class;

9    G.    Pre- and post-judgment interest at the highest rate allowed by law; and

10    H.    Such other and further relief as this Court may deem just, equitable, or

11    proper, including a designation that any unclaimed monies may go to the next best

12    use.

13    <u>**DEMAND FOR JURY TRIAL**</u>

14    Plaintiff demands a trial by jury of the claims asserted in this complaint so

15    triable.

16

17

18

19

20

21

22

23

24

25

26

27

28

- 25 -

AMENDED CLASS ACTION COMPLAINT
010909-16/1327971 V4

1   RESPECTFULLY SUBMITTED this 9th day of October, 2020.

2                                          THE PAYNTER LAW FIRM PLLC

3

4                                          By:  */s/ Stuart M. Paynter*

5                                              Stuart M. Paynter (SBN 226147)
                                               1200 G Street NW, Suite 800
6                                              Washington, D.C. 20005
                                               Telephone: (919) 245-3116
7                                              Facsimile: (866) 734-0622
8                                              Email: stuart@paynterlaw.com

9                                              Gagan Gupta (*pro hac vice to be filed*)
                                               THE PAYNTER LAW FIRM PLLC
10                                             106 S. Churton Street, Suite 200
11                                             Hillsborough, NC 27278
                                               Telephone: (919) 245-3116
12                                             Facsimile: (866) 734-0622
13                                             Email: ggupta@paynterlaw.com

14                                             Robert B. Carey (*pro hac vice*)
15                                             E. Tory Beardsley (*pro hac vice*)
                                               HAGENS BERMAN SOBOL SHAPIRO LLP
16                                             11 West Jefferson Street, Suite 1000
17                                             Phoenix, Arizona 85003
                                               Telephone: (602) 840-5990
18                                             Email:  rob@hbsslaw.com
19                                             Email:  toryb@hbsslaw.com

20                                             *Attorneys for Plaintiff Beulahland, LTD.*

21

22

23

24

25

26

27

28

AMENDED CLASS ACTION COMPLAINT
010909-16/1327971 V4